UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NISRINE MINI MART, INC., and
ALI CHEBLI,

       Plaintiffs,                      CASE NO. _____

v.

ACE AMERICAN INSURANCE
COMPANY,

       Defendant.

---

IBRAHIM HAMMOUD (P75765)
ELSHARNOBY & ASSOCIATES, P.C.
Attorney for Plaintiffs
12824 Ford Rd Ste. 2
Dearborn, MI 48126
(313) 478-4494;  Fax: (866-380-4535)
iyhammoud@gmail.com

RUSSELL W. PORRITT II (P38659)
WARD, ANDERSON, PORRITT & BRYANT,
PLC
4190 Telegraph Road, Suite 2300
Bloomfield Hill, Michigan 48302
(248) 593-1440; Fax:  593-7920 (facsimile)
rporritt@wardanderson.com

Of counsel:
Gregory P. Deschenes (BBO No. 550830)
Troy K. Lieberman (BBO No. 681755)
NIXON PEABODY LLP
100 Summer Street
Boston, Massachusetts 02110
(617) 345-1000; Fax: (617) 345-1300

---

## NOTICE OF REMOVAL

      Defendant ACE American Insurance Company ("ACE"), pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, files this Notice of Removal of the above-captioned action from the Circuit Court for the County of Wayne, State of Michigan, where it is denominated as Case No. 12-006498, to the United States District Court for the Eastern District of Michigan.  As grounds for removal, ACE states as follows:

14010133.2

1.      On or about May 16, 2012, plaintiffs Nisrine Mini Mart, Inc. and Ali Chebli ("Plaintiffs") purportedly served, by certified mail addressed to Melody Curry, ACE Claims Specialist, with a Proof of Service and Complaint filed in the Circuit Court for the County of Wayne, State of Michigan.  True and accurate copies of the Proof of Service and Complaint are attached as **_Exhibit A_**.

2.      This is a case that arises from costs allegedly incurred as a result of leaking underground storage tanks that allegedly occurred at 3344 Puritan Street, Detroit, Michigan.  In substance, Plaintiffs allege that ACE breached an insurance policy with Plaintiffs by "[f]ailing to assist Plaintiff [sic] with updating the underground storage tanks", "[f]ailing to compensate Plaintiffs for their costs in updating the underground storage tanks", and "failing to perform on their obligations under the contract."  Complaint at ¶ 28.  Plaintiffs further allege that ACE's denial of the claim was unreasonable and done in bad faith.  Complaint at ¶ 36.

3.      In the Complaint, Plaintiffs seek to recover against ACE for their alleged losses on theories of breach of contract (Count I) and unfair failure to pay insurance benefits (Count II).

4.      Upon information and belief, Plaintiffs seek to recover in excess of $150,776.20 for the damages they allege they sustained.  Therefore, without admitting, and expressly denying the validity of Plaintiffs' causes of action, the amount in controversy in this action exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

5.      In the Complaint, Plaintiffs allege that Nisrine Mini Mart is a business entity residing in Detroit, Michigan.  Complaint at ¶ 2.  Upon information and belief, Plaintiff Nisrine Mini Mart is a corporation organized under the laws of Michigan with its principal place of business in Detroit, Michigan.

-2-

14010133.2

6.      Upon information and belief, Plaintiff Ali Chebli is a resident of the State of Michigan.

7.      ACE is a corporation organized under the laws of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania.

8.      Accordingly, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332, because this action is between citizens of different states and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.  Removal of this action is therefore proper pursuant to 28 U.S.C. § 1441.

9.      This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b), as ACE removed the case within 30 days of the receipt of the Complaint by the defendants.

10.     The United States District Court for the Eastern District of Michigan includes the County in which the state court action is now pending.  Thus, this Court is the proper venue for this action pursuant to 28 U.S.C. § 1446(a).

11.     Pursuant to 28 U.S.C. § 1446(d), ACE is filing a written notice of this removal with the Clerk of the Circuit Court for the County of Wayne.  See **Exhibit B** attached hereto.  Copies of the Notice of Filing and this Notice of Removal are being served upon Plaintiffs' counsel as required by 28 U.S.C. § 1446(d).

WHEREFORE, this action should be removed to the United States District Court for the Eastern District of Michigan.

14010133.2

Respectfully submitted,

ACE AMERICAN INSURANCE COMPANY,

By its attorneys,


 */s/ Russell W. Porritt II*

RUSSELL W. PORRITT II (P38659)
WARD, ANDERSON, PORRITT & BRYANT, PLC
4190 Telegraph Road, Suite 2300
Bloomfield Hill, Michigan 48302
(248) 593-1440; Fax:  593-7920
rporritt@wardanderson.com

Of counsel:
Gregory P. Deschenes (BBO No. 550830)
Troy K. Lieberman (BBO No. 681755)
NIXON PEABODY LLP
100 Summer Street
Boston, Massachusetts 02110
(617) 345-1000; Fax:  (617) 345-1300

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing instrument was served upon the attorneys of record of all parties to the above cause by electronic filing at their respective e-mail addresses as disclosed by the pleadings of record herein and/or by U.S. Mail, on June 12, 2012.  I declare under penalty of perjury that the above statement is true to the best of my knowledge, information and belief.

*/s/ Bonnie L. Klimek*
_____
Bonnie L. Klimek

---

14010133.2

## <u>INDEX OF EXHIBITS</u>

EXHIBIT A – State Verified Complaint

EXHIBIT B – Notice of Filing Removal

14010133.2

# EXHIBIT A
VERIFIED COMPLAINT

3012145A4107002M          20120524

## STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

NISRINE MINI MART INC,
ALI CHEBLI

       Plaintiff,

                                        Case No:12-006498-CK
                                        Judge:

v.

ACE AMERICAN INSURANCE COMPANY,

       Defendants.

---

Ibrahim Hammoud (P75765)
Elsharnoby & Associates P C.
Attorney for Plaintiffs
12824 Ford Rd Ste 2
Dearborn MI 48126
(313) 478-4494 (p)
(866) 380-4535 (f)

---

## PROOF OF SERVICE

      Ibrahim Hammoud, certifies that a copy of **the Complaint** along with this Proof of Service were served upon counsel of record at their respective business address(es) as disclosed by the pleadings of record hereon on May 16, 2012. I declare under penalty of perjury that the statement above is true to the best of my knowledge, information and belief.

By

      ___X___ U.S. Mail                    _____ Facsimile

      _____ Hand Delivered      _____ Overnight Service

      ___X___ E-Filing

                              IBRAHIM HAMMOUD

3012145A4107002M      20120524

# STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

NISRINE MINI MART INC,
ALI CHEBLI

     Plaintiff,

v.

ACE AMERICAN INSURANCE COMPANY,

     Defendants

Case No     -CK
Judge

---

Ibrahim Hammoud (P75765)
Elsharnoby & Associates P C.
Attorney for Plaintiffs
12824 Ford Rd Ste 2
Dearborn MI 48126
(313) 478-4494 (p)
(866) 380-4535 (f)

---

There is no other pending or resolved action arising out of the same transaction or occurrence alleged in this complaint

## VERIFIED COMPLAINT

Plaintiffs, NISRINE MINI MART, INC AND ALI CHEBLI, through their attorneys, Elsharnoby & Assoicaties P.C , for their complaint state as follows.

### Introduction

1. Plaintiffs bring this action for money damages for compensation of personal expenditures made to replace underground gasoline storage tanks that were insured by Defendant.

### Jurisdictional Allegations

2. That Plaintiff Nisrine Mini Mart is a business entity residing in 3344 Puritan St Detroit, Michigan.

3. Defendant ACE American Insurance Company is a Pennsylvania corporation with its principal place of business in Philadelphia

3012145A4107002M      20120524

4.  Venue is proper because the subject property is located in Wayne County and the pertinent events took place in Wayne County

5.  This court has subject matter jurisdiction in this matter, as there is over $30,000 in controversy.

**Factual Allegations**

6.  That Ali Chebli and his brother Fawaz Chebli purchased a gas station located at 3344 Puritan St., Detroit, MI 48228 through their corporation Nisrine Mini Mart, Inc in 2002.

7.  That in order to purchase this property, they approached Comerica Bank for a loan

8   That as part Comerica Bank's due diligence, ATC was hired to do an environmental inspection.

9   This 2002 inspection revealed no defects in the underground storage tanks and so Nisrine Mini Mart was able to secure a bank loan to purchase the property

10  That in May of 2006, Plaintiffs contracted with ACE Insurance, as required by state law, to insure their underground storage tanks (USTs).

11. That sometime after June, 1 2006 and before January, 18 of 2007, Michigan environmental inspectors found regulated substances were leaking (or likely were leaking) into the soil and required Nisrine Mini Mart, Inc. to hire a site evaluator to find and fix the problem with the underground storage tanks

12  On January 18, 2007 Oscar W. Larson conducted a tank inspection and found all underground tanks to be in unacceptable condition and recommended they be updated and/or changed as soon as possible.

13. This report found that regulated substances were leaking into the soil or found evidence that would later reveal this

14. From the findings of this report, the state red-tagged the underground storage tanks requiring Plaintiffs to remedy the issue as soon as possible

15. For the months following this report, Mr Chebli worked diligently to obtain all of the permits and required legwork to excavate the underground tanks to fix the issue as required by law.

16  Ali Chebli hired American Tank, Inc. to update and/or change the Underground Storage Tanks, which they did perform in July of 2007.

17  American Tank, Inc. charged a total of $150, 776 20 to complete the job. **Exhibit 1.**

3012145A4107002M          20120524

18  That Ali Chebli used his personal credit to pay this amount

19  During this time Ali Chebli made an official claim with ACE in order to be compensated for his personal expenditures.

20  ACE continually delayed in approving or denying the claim

21. On March 27, 2012 ACE insurance officially denied the claim for misrepresentations on the application, failure to comply with environmental laws, and various other exclusions found under the insurance policy that have no relation to the facts of this case.

22  Consequently, Nisrine Mini Mart and Ali Chebli brought this action for money damages owed to it by ACE through their insurance policy  **Exhibit 2.**

## CLAIMS

**COUNT I. Breach of Contract**

23. Defendant ACE Insurance Company agreed to insure Plaintiff Nisrine Mini Mart, Inc for consideration paid.

24  This insurance policy purported to cover all damages (up to $1,000,000) the insured becomes legally obligated to pay for "corrective action costs" resulting from an "underground storage tank incident"  **See Exhibit 2.**

25. An "underground storage tank" is defined as a "release" from an "insured tank" of petroleum into the soil or surrounding area

26. That a release was confirmed to have existed well within the policy period

27  Plaintiffs contracted with American Tank, Inc  to update the underground storage tanks and paid $150,776.20 for the procedure

28. Defendants breached the insurance policy with Plaintiffs by the following actions, including but not limited to

   1.  Failing to assist Plaintiff with updating the underground storage tanks;

   2.  Failing to compensate Plaintiffs for their costs in updating the underground storage tanks; and

   3.  By failing to perform on their obligations under the contract.

29. As a result of these failures Plaintiffs suffered substantial damages including but not limited to, monies paid to update the tanks, interest paid on Plaintiff's personal and business credit, and other costs

**COUNT II. Unfairly failed to pay Insurance benefits. [MCL 500.2006(1)]**

3

3012145A4107002M        20120524

30. Plaintiff incorporates the allegations above.

31. Defendant, ACE failed to compensate Plaintiffs for their claim for an apparent lack of documents submitted.

32. Plaintiffs maintain they had submitted sufficient documents to Defendant by the end of 2007.

33 Defendants denied the claim on March 27, 2012 based on the same information they had in their possession for years

34. The reasons cited for Defendant's denial of the claim are objectively vague, broad, and unclear.

35. A vague and unclear denial shows that Defendant's denial is unreasonable.

36 Unreasonable denials are considered bad faith denials.

37 Plaintiff is entitled to 12% per annum interest from December 2007 until May 2012 on the monies paid to remedy the underground storage tanks.

**WHEREFORE,** Plaintiff requests the following relief:

A   Judgment against all Defendant in whatever amount the Court deems fair and just to compensate Plaintiff for the actual damages sustained, for statutory damages and interest to which they are entitled, and for all court costs and litigation expenses

B.   Exemplary damages against all Defendants in whatever amount the Court deems fair and just to punish Defendants for their wrongful conduct and deter Defendants and others from engaging in similar malfeasance in the future.

C.   Such other relief the Court finds necessary and appropriate in the interests of justice.

Respectfully Submitted,

Dated   5-14-12

Ibrahim Hammoud (P75765)
Elsharnoby & Associates P.C.
Attorney for Plaintiffs
12824 Ford Rd Ste 2
Dearborn MI 48126
(313) 478-4494 (p)
(866) 380-4535 (f)

4

3012145A4107002M          20120524

# EXHIBIT 1

3012145A4107002M      20120524



# AMERICAN
## TANK, Inc.
**10101 Ford Road**
**Dearborn, MI 48126**
**(313) 945-1800**



# Account Statement

**7/20/2007**

**Bill To**                    **Location**

NISRINE MINI MART
3344 PURITAN
DETROIT, MI 48238

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|------|-------------|--------|---------|
| 5/13/07 | CHECK NO. 1004 | 11,000.00 | 11,000.00 |
| 5/15/07 | CHECK NO. 1006 | 29,000.00 | 40,000.00 |
| 6/7/07 | CHECK NO. 1001 | 10,000.00 | 50,000.00 |
| 6/15/07 | CHECK NO.336440087 | 50,000.00 | 100,000.00 |
| 6/25/07 | WIRE TRANSFER (FRANKLIN FUELING) | 9,276.20 | 109,276.20 |
| 6/25/07 | CHECK NO. 1008 | 6,000.00 | 115,276.20 |
| 6/28/07 | CHECK NO. 1007 | 4,500.00 | 119,776.20 |
| 7/6/07 | CHECK NO. 1009 | 3,000.00 | 122,776.20 |
| 7/6/07 | CHECK NO. 1702 | 9,000.00 | 131,776.20 |
| 7/9/07 | CHECK NO. 1013 | 3,000.00 | 134,776.20 |
| 7/12/07 | CHECK NO. 1018 | 10,000.00 | 144,776.20 |
| 7/19/07 | CHECK NO. 1713 | 6,000.00 | 150,776.20 |
|  |  |  |  |
|  |  |  |  |
|  | JOB HAS BEEN COMPLETED AND PAID IN FULL |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**Thank You, For Your Business!**
**Please Make Checks Payable To American Tank, inc.**

| Payment Terms | Please Mail Payments To: |
|---------------|--------------------------|
| Upon Reciept | 10101 Ford Road, Dearborn, MI 48126 |

Phone: (313) 945-1800, Fax: (313) 945-0800. Email: amertank@sbcglobal.net



3012145A4107002M          20120524

# EXHIBIT 2

3012145A4107002M          20120524

 **ACE American Insurance Company**

# Declarations –
# Underground Storage Tanks
# Liability Policy Claims-Made

| NAMED INSURED AND ADDRESS | POLICY IDENTIFICATION |
|---|---|

Nisrine Mini Mart
3344 Puritan Street
Detroit, MI 48238

| TSP | G21843428 001 |
|---|---|

**PRODUCER CODE: 277680**

MARKETING OFFICE   Philadelphia
MARKET HAZARD CODE  N/A
PIIC CODE. 5541        INDUSTRY CODE  N/A

| POLICY IS: | : New | OF | G21843428 |
|---|---|---|---|
| NAMED INSURED IS | : Nisrine Mini Mart | | |
| BUSINESS OF INSURED | : Misc. - Petroleum Storage | | |
| POLICY PERIOD | · FROM 05/26/2006 | TO | 05/26/2007 |
| | At 12 01 A M  standard time at your mailing address shown above | | |

IN RETURN FOR THE PAYMENT OF PREMIUM, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATES IN THIS POLICY, SUBJECT TO ALL THE TERMS AND CONDITIONS OF THIS POLICY

### IMPORTANT NOTICE
### THIS POLICY IS ISSUED ON A CLAIMS-MADE BASIS

| RETROACTIVE DATE. | COVERAGE A OF THIS INSURANCE DOES NOT APPLY TO "BODILY INJURY" OR "PROPETY DAMAGE", AND COVERAGE B OF THIS INSURANCE DOES NOT APPLY TO "CORRECTIVE ACTION COSTS", WHICH OCCUR BEFORE THE RETROACTIVE DATE SHOWN BELOW |
|---|---|
| RETROACTIVE DATE | 05/26/2005 |

UW-5X99 (2/97)

3012145A4107002M        20120524

POLICY IDENTIFICATION

| DECLARATIONS – UNDERGROUND STORAGE TANK LIABILITY POLICY<br>CLAIMS-MADE                    Page 2 | TSP | G21843428 001 |
|---|---|---|

| LIMITS OF INSURANCE |
|---|

| UNDERGROUND STORAGE TANK INCIDENT LIMIT | $ 1,000,000 |
| AGGREGATE LIMIT | $ 1,000,000 |
| DEFENSE EXPENSE AMOUNT | $ 1,000,000 |

| DEDUCTIBLES |
|---|

DEDUCTIBLE AMOUNT                    $ 5,000
                                    (Enter amount of deductible or "none"
                                    if no deductible amount applies )

| EPA IDENTIFICATION AND PREMIUM PAYMENT CONDITIONS |
|---|

EPA IDENTIFICATION NUMBER (If applicable) _ As on file with the insurer

AUDIT PERIOD  None

PAYMENT FREQUENCY  Annual

PAYMENT SCHEDULE   N/A

Premium                                        $ 1,684.00

TOTAL AMOUNT DUE                               $ 1,684.00

PREMIUMS RESULTING FROM AUDIT ARE NOT INCLUDED IN THE ABOVE.

| SCHEDULE OF LOCATIONS |
|---|

LOCATION NUMBER AND ADDRESS OF INSURED SITE· As on file with the insurer

1.                                    4.

2.                                    5.

3.                                    6.

UW-5X99 (2/97)

3012145A4107002M     20120524

COMMERCIAL GENERAL LIABILITY
CG 00 42 10 01

# UNDERGROUND STORAGE TANK POLICY DESIGNATED TANKS

**THIS FORM PROVIDES CLAIMS-MADE COVERAGE.
PLEASE READ THE ENTIRE FORM CAREFULLY.**

COVERAGE A OF THIS POLICY PROVIDES BODILY INJURY AND PROPERTY DAMAGE LIABILITY COVERAGE ON A CLAIMS-MADE BASIS. COVERAGE B OF THIS POLICY PROVIDES CORRECTIVE ACTION COSTS COVERAGE ON AN INCIDENT-REPORTED BASIS.

THIS POLICY PROVIDES PAYMENTS FOR DEFENSE EXPENSE WHICH ARE LIMITED UNDER THE PROVISIONS OF DEFENSE EXPENSE PAYMENTS (PARAGRAPH 2. OF SECTION III).

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy The words "we", "us" and "our" refer to the company providing this insurance

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured The phrase "first Named Insured" means the first person or organization listed as a Named Insured in the Declarations

Other words and phrases that appear in quotation marks have special meaning Refer to Section VI – Definitions

## SECTION I – UNDERGROUND STORAGE TANK COVERAGE

1. **Insuring Agreement**

   a. **Coverage A – Bodily Injury And Property Damage Liability**

      (1) We will pay those sums that the insured becomes legally obligated to pay as compensatory damages because of "bodily injury" or "property damage" to which this insurance applies

      (2) This insurance applies to "bodily injury" and "property damage" only if.

         (a) The "bodily injury" or "property damage" is caused by an "underground storage tank incident" that commences on or after the Retroactive Date shown in the Declarations of this policy and before the end of the policy period;

         (b) The insured's responsibility to pay damages because of "bodily injury" or "property damage" is determined in a "suit" on the merits in the "coverage territory" or in a settlement we agree to; and

      (c) A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in writing, in accordance with Paragraph (3) below, during the policy period or any Extended Reporting Period we provide under Section V – Extended Reporting Periods

      (3) A claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times

         (a) When notice of such claim is received and recorded by any insured or by us, whichever comes first; or

         (b) When we make a settlement in accordance with Paragraph 3. below

      All claims for damages because of "bodily injury" to the same person, including damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury", will be deemed to have been made at the time the first of those claims is made against any insured

3012145A4107002M          20120524

All claims for damages because of "property damage" causing loss to the same person or organization as a result of an "underground storage tank incident" will be deemed to have been made at the time the first of those claims is made against any insured.

(4) The amount we will pay for damages because of "bodily injury" or "property damage" or for "corrective action costs" (Coverage **B**) is limited as described in Paragraph **1.** of Section **III** – Limits Of Insurance

**b. Coverage B – Corrective Action Costs**

(1) We will pay those sums the insured becomes legally obligated to pay for "corrective action costs" to which this insurance applies as a result of an "underground storage tank incident"

(2) This insurance applies only if

  (a) An "underground storage tank incident" commences on or after the Retroactive Date shown in the Declarations of this policy and before the end of the policy period, and

  (b) Such "underground storage tank incident" is reported in writing, in accordance with Paragraph **(3)** below, during the policy period or any Extended Reporting Period we provide under Section **V** – Extended Reporting Periods.

(3) An "underground storage tank incident" will be considered reported at the earliest time:

  (a) You report to us, in writing, an "underground storage tank incident",

  (b) You report to an "implementing agency", in writing, an "underground storage tank incident", or

  (c) You receive a written notice from an "implementing agency" which requests or demands that you take action due to an "underground storage tank incident".

(4) The amount we will pay for damages because of "bodily injury" or "property damage" (Coverage A) or for "corrective action costs" is limited as described in Paragraph **1.** of Section **III** – Limits Of Insurance

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**c. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law

**d. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of

  (a) Employment by the insured, or

  (b) Performing duties related to the conduct of the insured's business, or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above

This exclusion applies

(1) Whether the insured may be liable as an employer or in any other capacity, and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury

## e. Damage To Property

"Property damage" to

(1) Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property,

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you, or

(4) Personal property in the care, custody or control of the insured

## f. Failure To Comply With Environmental Laws

"Bodily injury", "property damage" or "corrective action costs" arising out of an "underground storage tank incident" which results from or is directly or indirectly attributable to failure to comply with any applicable statute, regulation, ordinance, directive or order relating to the protection of the environment and promulgated by any governmental body, provided that failure to comply is a willful or deliberate act or omission of

(1) The insured, or

(2) You or any of your members, managers, partners or "executive officers".

## g. Corrective Actions

"Corrective action costs" or any other expenses

(1) Resulting from any "underground storage tank incident" which is intended from the standpoint of the insured,

(2) Resulting from actions taken to report, investigate or confirm a "release";

(3) To repair, replace or upgrade any "insured tank";

(4) Which are fines or penalties imposed by a federal, state or local governmental authority;

(5) To replace the contents of an "insured tank", or

(6) Which are part of your restoration, enhancement or routine maintenance of any "insured tank" or of the site where any "insured tank" is located.

## 3. Our Right And Duty To Defend

We will have the right and duty to defend the insured against any "suit" seeking damages because of "bodily injury" or "property damage" to which this insurance applies, or seeking the payment of "corrective action costs" to which this insurance applies, and to pay or reimburse for "defense expense" as provided under Paragraph 2. of Section III – Limits Of Insurance and Defense Expense Amount and Paragraph 4. – Defense Expense Payments below.

However, we will have no duty to defend the insured against, or to pay or reimburse for "defense expense" for, "suits" seeking damages, or seeking the payment of "corrective action costs", not covered by this policy.

We may at our discretion investigate any "underground storage tank incident" and settle any "suit" or claim for "bodily injury", "property damage" or "corrective action costs" that may result

Our duty to defend and to pay or reimburse for "defense expense" is limited as described in Paragraph 2. of Section III – Limits Of Insurance and Defense Expense Amount and Paragraph 4. – Defense Expense Payments below and ends at the earlier of the following times:

a. When we have used up the applicable limit of insurance in the payment of judgments or settlements, or payments or reimbursements for "corrective action costs", or

b. When we have used up the Defense Expense Amount in payments or reimbursements of "defense expense"

This applies both to claims or "suits" pending at that time and those filed thereafter

## 4. Defense Expense Payments

"Defense expense" payments or reimbursements are subject to the Defense Expense Amount shown in the Declarations of this policy. This applies even if, by mutual agreement or court order, the insured assumes control of the defense of a "suit" before the Limit Of Insurance or the Defense Expense Amount is used up. If no Defense Expense Amount is shown in the Declarations of this policy, the Defense Expense Amount shall be equal to the Aggregate Limit shown in the Declarations of this policy. If the insured assumes control of the defense before the Defense Expense Amount is used up, we will reimburse the insured, or pay, for reasonable "defense expense", but only up to the remaining Defense Expense Amount then available

3012145A4107002M        20120524

**5. Supplementary Payments**

We will pay, with respect to any claim we investigate or settle or any "suit" against an insured we defend, or any claim or "suit" to which this insurance applies and for which an applicable limit of insurance is available for payment of damages or "corrective action costs":

a. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance

b. Expenses incurred by the insured for first aid administered to others at the time of an "underground storage tank incident" for "bodily injury" to which this insurance applies

c. Prejudgment interest awarded against the insured on that part of the judgment we pay If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer

These amounts will not reduce the Limits Of Insurance or Defense Expense Amount as provided under Section **III.**

**6. No Other Obligation Or Liability**

No other obligation or liability to pay sums or to perform acts or services is covered unless explicitly provided for in this policy.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations of this policy as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured Your members are also insureds, but only with respect to the conduct of your business Your managers are insureds, but only with respect to their duties as your managers

d. An organization other than a partnership, joint venture or limited liability company, you are an insured Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors Your stockholders are also insureds, but only with respect to their liability as stockholders

2. Each of the following is also an insured

a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business However, none of these "employees" is an insured for

(1) "Bodily injury"

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph (1)(a) above, or

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company)

3012145A4107002M      20120524

b. Any person or organization having proper temporary custody of your property if you die, but only:

   (1) With respect to liability arising out of the maintenance or use of that property; and

   (2) Until your legal representative has been appointed.

c. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations of this policy

## SECTION III – LIMITS OF INSURANCE AND DEFENSE EXPENSE AMOUNT

### 1. Limits Of Insurance

a. The Limits Of Insurance shown in the Declarations of this policy and the rules below fix the most we will pay regardless of the number of

   (1) Insureds,

   (2) Persons or organizations making claims or bringing "suits";

   (3) Claims made or "suits" brought, or

   (4) Requests or demands made by "implementing agencies" seeking "corrective action costs" or requiring action by you.

b. The Aggregate Limit is the most we will pay for the sum of:

   (1) All damages because of all "bodily injury" and "property damage", and

   (2) All "corrective action costs".

c. We will pay damages and "corrective action costs" only for the amount of damages or "corrective action costs" which are in excess of the deductible amount, if any, shown in the Declarations. Subject to the Aggregate Limit above, the most we will pay in any one "underground storage tank incident" for the sum of:

   (1) All damages because of all "bodily injury" and "property damage", and

   (2) All "corrective action costs"

   will be the lesser of the each "Underground Storage Tank Incident" Limit or the sum of those damages and "corrective action costs".

If the sum of damages and "corrective action costs" is less than the "Underground Storage Tank Incident" Limit, we will pay all of any deductible amount, if applicable, to effect settlement of any claim or "suit" Upon notice of our payment of a deductible amount, you shall promptly reimburse us for the part of the deductible amount we paid

Each payment we make for damages or for "corrective action costs" reduces both the "Underground Storage Tank Incident" Limit and the Aggregate Limit.

The Limits Of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance

### 2. Defense Expense Amount

a The Defense Expense Amount as described in Paragraph 4. of Section I – Defense Expense Payments is the most we are obligated to pay for "defense expense", regardless of the number of.

   (1) Insureds,

   (2) Persons or organizations making claims or bringing "suits";

   (3) Claims made or "suits" brought, or

   (4) "Underground storage tank incidents"

b. Each payment or reimbursement we make for "defense expense" reduces the Defense Expense Amount but will not reduce the Limits Of Insurance

c. The Defense Expense Amount is not subject to a deductible, if applicable

d. The Defense Expense Amount applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Defense Expense Amount

3012145A4107002M     20120524

## SECTION IV – CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

2. **Duties In The Event Of An Underground Storage Tank Incident**

   a. You must see to it that we are notified promptly of an "underground storage tank incident" which may result in a claim, request, demand or proceeding to impose an obligation on the insured for damages because of "bodily injury" or "property damage" or for "corrective action costs". Notice should include:

      (1) How, when and where the "underground storage tank incident" took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury, damage or "release"

      Notice of an "underground storage tank incident" is not notice of a claim under Coverage A (Section I). Notice of an "underground storage tank incident" is not a report of an "underground storage tank incident" under Coverage B (Section I) unless such notice meets the reporting requirement provided in Paragraph **1.b.(3)** under **Coverage B (Section I)**

   b. If a claim is made or "suit" is brought against any insured, or if a request or demand is received from an "implementing agency" requiring action by you, because of an "underground storage tank incident", you must see to it that we receive prompt written notice of such claim, "suit", request or demand

   c. In connection with an "underground storage tank incident", you and any other involved insured must

      (1) Immediately send us copies of any requests, demands, notices, summonses or legal papers received in connection with the claim or "suit",

      (2) Authorize us to obtain records and other information,

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit", request or demand; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. With respect to Coverage **A**, no insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent

3. **Legal Action Against Us**

   No person or organization has a right under this policy

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured, or

   b. To sue us under this policy unless all of its terms have been fully complied with

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured, but we will not be liable for damages or for "corrective action costs" that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative

4. **Other Insurance**

   If other valid and collectible insurance is available to the insured for a loss we cover under this policy, our obligations are limited as follows

   a. **Primary Insurance**

      This insurance is primary except when **b.** below applies When this insurance is primary, our obligations are not affected unless any of the other insurance is also primary Then, we will share with all that other insurance by the method described in **c.** below.

    © ISO Properties, Inc , 2000       □

3012145A4107002M          20120524

**b. Excess Insurance**

(1) This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis, that is effective prior to the beginning of the policy period shown in the Declarations of this policy and applies to "bodily injury" or "property damage" on other than a claims-made basis or "corrective action costs" on other than an incident-reported basis, if:

    (a) No Retroactive Date is shown in the Declarations of this policy; or

    (b) The other insurance has a policy period which continues after the Retroactive Date shown in the Declarations of this policy

(2) When this insurance is excess, we will have no duty under Section I – Underground Storage Tank Coverage to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends and the Defense Expense Amount under this policy has not been used up, we will undertake to provide a defense in accordance with the provisions of Paragraph 3. of Section I – Underground Storage Tank Coverage. However, we will be entitled to the insured's rights against all those other insurers

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of

    (a) The total amount that all such other insurance would pay for the loss in the absence of this insurance, and

    (b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance Provision and was not bought specifically to apply in excess of the Limits Of Insurance shown in the Declarations of this policy

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers

**5 Premium Audit**

**a.** We will compute all premiums for this policy in accordance with our rules and rates

**b.** Premium shown in this policy as advance premium is a deposit premium only At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations of this policy are accurate and complete;

**b.** Those statements are based upon representations you made to us, and

**c.** We have issued this policy in reliance upon your representations

**7. Separation Of Insureds**

Except with respect to the Limits Of Insurance, the Defense Expense Amount, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured, and

**b.** Separately to each insured against whom claim is made or "suit" is brought

 © ISO Properties, Inc., 2000

3012145A4107002M          20120524

8. **Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them

9. **Policy Issued To Comply With Law Or Regulation**

When requested, we agree to furnish to the director of the "implementing agency" a signed duplicate original of this policy and all endorsements issued with this policy.

10. **Cancellation**

   a. The first Named Insured may cancel this policy by mailing or delivering to us advance written notice of cancellation

   b. We may cancel this policy by sending by certified mail, or delivering, to you a written notice at your last mailing address known to us

   Cancellation will be effective.

   (1) 10 days after you receive notice of cancellation if we cancel for nonpayment of premium or misrepresentation by you, or

   (2) 60 days after you receive notice of cancellation if we cancel for any other reason,

   unless we specify a later date in our notice as the effective date of cancellation

   c. If this policy is cancelled, we will send the first Named Insured any premium refund due If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata The cancellation will be effective even if we have not made or offered a refund

11. **Nonrenewal**

If we decide not to renew this policy, we will send written notice of nonrenewal to you at least 60 days before the end of the policy period We will send our nonrenewal notice by certified mail, or deliver it, to you at your last mailing address known to us.

12. **Financial Responsibility And Reimbursement**

If this policy is issued to certify your compliance with the Federal Environmental Protection Agency financial responsibility requirements imposed on you as an owner or operator of an "insured tank", we will comply with such financial responsibility requirements. You agree to reimburse us for any payment made by us on your behalf which we would not have been obligated to make under the terms of this policy but for the agreement contained in the first sentence of this condition.

13. **Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward

14. **Inspections And Surveys**

   a. We have the right, but are not obligated, to

   (1) Make inspections and surveys at any time,

   (2) Give you reports on the conditions we find, and

   (3) Recommend changes

   b. Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public And we do not warrant that conditions.

   (1) Are safe or healthful, or

   (2) Comply with laws, regulations, codes or standards

   c. This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

          © ISO Properties, Inc., 2000                   □

3012145A4107002M        20120524

## 15. Premiums

The first Named Insured shown in the Declarations

a. Is responsible for the payment of all premiums; and

b. Will be the payee for any return premium we pay

## 16. If You Are Permitted To Retain Defense Counsel

If by mutual agreement or court order the insured is given the right to retain defense counsel and neither the Limit Of Insurance nor the Defense Expense Amount has been used up, the following provisions apply:

a. We retain the right, at our discretion, to.

(1) Settle, approve or disapprove the settlement of any claim or "suit", and

(2) Appeal any judgment, award or ruling at our expense

b. You and any other involved insured must·

(1) Continue to comply with the Duties In The Event Of An Underground Storage Tank Incident Condition (Paragraph 2. of this section) as well as the other provisions of this policy; and

(2) Direct defense counsel of the insured to

(a) Furnish us with the information we may request to evaluate "suits" under this policy for those "suits"; and

(b) Cooperate with any counsel we may select to monitor or associate in the defense of those "suits"

## 17. Transfer Of Duties When A Limit Of Insurance Or The Defense Expense Amount Is Used Up

a. If we conclude that, based on "underground storage tank incidents", claims or "suits" which have been reported to us and to which this insurance may apply

(1) A limit of insurance is likely to be used up in the payment of judgments or settlements for damages or in the payment of "corrective action costs", or

(2) The Defense Expense Amount is likely to be used up in the payment or reimbursement of "defense expenses",

we will notify the first Named Insured, in writing, to that effect.

b. When either of the following has occurred

(1) A limit of insurance has actually been used up in the payment of judgments or settlements for damages or in the payment of "corrective action costs", or

(2) The Defense Expense Amount has actually been used up in the payment or reimbursement of "defense expenses",

we will

(a) Notify the first Named Insured in writing, as soon as practicable, that·

(i) Such a limit has actually been used up and that our duty to defend the insured against "suits" seeking damages subject to that limit has also ended, or

(ii) The Defense Expense Amount has actually been used up and that our duty to defend the insured against any "suit" seeking damages has ended,

whichever is applicable

(b) Initiate, and cooperate in, the transfer of control, to any appropriate insured, of all

(i) Claims; and

(ii) "Suits" for which the duty to defend has ended for the reason described in b.(1) or b.(2) above

and which are reported to us before that duty to defend ended

(c) Take such steps, as we deem appropriate, to avoid a default in, or continue the defense of, such "suits" until such transfer is completed, provided the appropriate insured is cooperating in completing such transfer

c. When either b.(1) or b.(2) above has occurred, the first Named Insured, and any other insured involved in a "suit" seeking damages subject to that limit, must·

(1) Cooperate in the transfer of control of claims and "suits", and

(2) Arrange for the defense of such "suit" within such time period as agreed to between the appropriate insured and us Absent any such agreement, arrangements for the defense of such "suit" must be made as soon as practicable

3012145A4107002M        20120524

d. We will take no action with respect to defense for any claim or "suit" if such claim or "suit" is reported to us after.

  (1) The applicable limit of insurance has been used up, even if the Defense Expense Amount has not been used up; or

  (2) The Defense Expense Amount has been used up, even if the limit of insurance has not been used up

  When either d.(1) or d.(2) above has occurred, it becomes the responsibility of the first Named Insured, and any other insured involved in such a claim or "suit", to arrange defense for such claim or "suit".

e. The first Named Insured will reimburse us for expenses we incur in taking those steps we deem appropriate in accordance with Paragraph b. above

  The duty of the first Named Insured to reimburse us will begin on:

  (1) The date on which the applicable limit of insurance is used up, if we sent notice in accordance with Paragraph a. above; or

  (2) The date on which we sent notice in accordance with Paragraph b. above, if we did not send notice in accordance with Paragraph a. above

f. If a limit of insurance is available for payment of damages or "corrective action costs", and if our duty to defend the insured against "suits" and to pay "defense expenses" has ended because we have used up the Defense Expense Amount and we have transferred the control of defense of "suits" to you, the following provisions apply

  (1) We retain the right, at our discretion, to appeal any judgment, award or ruling at our expense

  (2) You and any other involved insured must

    (a) Continue to comply with the Duties In The Event Of An Underground Storage Tank Incident Condition as well as the other provisions of this policy; and

    (b) Direct defense counsel of the insured to

      (i) Furnish us with the information we may request to evaluate "suits" and coverage under this policy for those "suits"; and

      (ii) Cooperate with any counsel we may select to monitor or associate in defense of those "suits"

  (3) You have the right to settle any outstanding or additional claims or "suits" However, our obligation to pay for such a settlement is limited to the amount within or up to the available limit of insurance

g. The exhaustion of

  (1) Any limit of insurance by the payment of

    (a) Judgments or settlements for damages, or

    (b) "Corrective action costs"; or

  (2) The Defense Expense Amount by the payment or reimbursement of "defense expenses",

  and the resulting end of our duty to defend, will not be affected by our failure to comply with any of the provisions of this Condition

## SECTION V – EXTENDED REPORTING PERIODS

1. We will provide one or more Extended Reporting Periods, as described below, if

a. This policy is cancelled or not renewed, or

b. We renew or replace this policy with insurance that:

  (1) Has a Retroactive Date later than the date shown in the Declarations of this policy, or

  (2) Does not apply to "bodily injury" or "property damage" on a claims-made basis or "corrective actions costs" on an incident-reported basis

2. Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to claims for.

a. "Bodily injury" or "property damage" caused by, and

b. "Corrective action costs" which result from

an "underground storage tank incident" that commenced before the end of the policy period, but not before the Retroactive Date, if any, shown in the Declarations

Once in effect, Extended Reporting Periods may not be cancelled.

3012145A4107002M          20120524

3. A Basic Extended Reporting Period is automatically provided, unless you choose to purchase a Supplemental Extended Reporting Period. When provided, there is no additional charge for the Basic Extended Reporting Period. The Basic Extended Reporting Period starts with the end of the policy period and lasts for six months. This period does not apply to claims for "bodily injury" or "property damage" or for "corrective action costs" that:

   a. Are covered under any subsequent insurance you purchase, or

   b. Would be covered but for the exhaustion of the applicable amount of either the limits of that subsequent insurance or the subsequent defense expense amount.

   The Basic Extended Reporting Period does not reinstate or increase the Limits of Insurance or the Defense Expense Amount or extend the policy period.

4. **Optional Supplemental Extended Reporting Period Endorsement**

   a. A Supplemental Extended Reporting Period of two years is available as an option, but only by an endorsement and for an additional charge. This supplemental period starts with the end of the policy period. If the Supplemental Extended Reporting Period is purchased, the Basic Extended Reporting Period does not apply.

   b. You must notify us in writing of your intent to purchase the Supplemental Extended Reporting Period.

      (1) Prior to either the end of the policy period or the date of termination, whichever comes first, if we cancel or nonrenew this policy for a reason for which we give less than 60 days' notice.

      (2) No less than 30 days prior to either the end of the policy period or the date of termination, whichever comes first, if we cancel or nonrenew this policy for a reason for which we give 60 days' or more notice.

      (3) At the same time that you notify us of your intent to cancel or nonrenew the policy, if you cancel or nonrenew this policy.

   The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

   c. The insurance provided under the Supplemental Extended Reporting Period Endorsement will be excess over any other valid and collectible insurance available to the insured, whether primary, excess, contingent or on any other basis, whose policy period begins or continues after the endorsement takes effect. Paragraph **4.b.** of Other Insurance in Section **IV** – Conditions will be amended accordingly.

   d. If the Supplemental Extended Reporting Period is in effect, we will provide the Supplemental Aggregate Limit and a Supplemental Defense Expense Amount as described below, but only for claims first received and recorded under Coverage **A** and incidents reported under Coverage **B** during the Supplemental Extended Reporting Period.

   The Supplemental Aggregate Limit Of Insurance will be equal to the dollar amount shown in the Declarations in effect at the end of the policy period for the Aggregate Limit. The Supplemental Defense Expense Amount will be equal to the dollar amount shown in the Declarations in effect at the end of the policy period for the Defense Expense Amount.

   Paragraphs **1.b.** and **2.** of Section **III** – Limits Of Insurance And Defense Expense Amount will be amended accordingly.

## SECTION VI – DEFINITIONS

1. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

2. "Corrective action costs" means reasonable and necessary expenses incurred by you in response to a confirmed "underground storage tank incident" for corrective action as specified in 40 CFR Sections 280.60-280.67 and 40 CFR Section 280.72 promulgated by the Federal Environmental Protection Agency (EPA).

3. "Coverage territory" means the United States of America (including its territories or possessions), Puerto Rico and Canada.

4. "Defense expense" means payments allocated to a specific claim or "suit" we investigate, settle or defend, for its investigation, settlement or defense, including:

   a. Fees and salaries of attorneys and paralegals we retain, including attorneys and paralegals who are our "employees"

3012145A4107002M        20120524

b. Fees of attorneys the insured retains when by mutual agreement or court order the insured is given the right to retain defense counsel to defend a "suit".

c. All other litigation expenses

d. Reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work

e. Costs taxed against the insured in the "suit"

"Defense expense" does not include salaries and expenses of our "employees" or the insured's "employees" (other than those described in **a.** and **d.** above) and does not include fees and expenses of independent adjusters we hire

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document

7. "Implementing agency" means the Federal Environmental Protection Agency (EPA), or, in the case of a state with a program approved under section 6991c of the Hazardous and Solid Waste Amendments of 1984, as amended (or pursuant to a memorandum of agreement with the EPA) the designated state or local agency responsible for carrying out an approved underground storage tank program.

8 "Insured tank" means any petroleum underground storage tank not excluded or exempted from the definition of underground storage tank under section 6991 of the Hazardous and Solid Waste Amendments of 1984, including any attached underground pumps and piping, if such tank is owned or operated by you and is listed in the Declarations of this policy

"Insured tank" does not include any tank which has been replaced by you during the policy period or the Extended Reporting Period, if such replacement is done without our agreement in writing

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

10. "Property damage" means:

a. Physical injury to, destruction of or contamination of tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury, destruction or contamination that caused it; or

b. Loss of use of tangible property that is not physically injured, destroyed or contaminated, but has been evacuated, withdrawn from use or rendered inaccessible because of an "underground storage tank incident". All such loss of use shall be deemed to occur at the time of the "underground storage tank incident" that caused it.

For the purposes of this insurance, electronic data is not tangible property

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from, computer software, including systems and applications software, hard or floppy discs, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

11. "Release" means any spilling, leaking, emitting, discharging, escaping, leaching or disposing of petroleum from an underground storage tank into ground water, surface water or subsurface soils.

12. "Suit" means:

a. A civil proceeding in which damages because of "bodily injury" or "property damage" to which this insurance applies are alleged, including

(1) An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

(2) Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

b. A civil proceeding or an administrative hearing in which payment of "corrective action costs" is sought.

13. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions

14. "Underground storage tank incident" means a "release" from an "insured tank". The entirety of continuous or repeated "releases" from the same "insured tank" shall be deemed to be one "underground storage tank incident"

 © ISO Properties, Inc , 2000   □

3012145A4107002M          20120524

# SCHEDULE OF COVERED STORAGE TANKS
## ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Nisrine Mini Mart | | ' | 1 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| TSP | G21843428 001 | 05/26/2006 to 05/26/2007 | 05/26/2006 |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer, agree that the following storage tank(s) have been added to the policy as listed "covered underground storage tanks" and/or "covered aboveground storage tanks"

| Insured Facility Name and Address | Tank ID No. | Tank Size (gal.) | Tank Type (UST or AST) | Retroactive Date |
|---|---|---|---|---|
| Nisrine Mine Mart 3344 Puritan  Detroit Michigan 48238 | 1 | 10000 | UST | |
| Nisrine Mine Mart 3344 Puritan  Detroit Michigan 48238 | 2 | 6000 | UST | |
| Nisrine Mine Mart 3344 Puritan  Detroit Michigan 48238 | 3 | 4000 | UST | |
| Nisrine Mine Mart 3344 Puritan  Detroit Michigan 48238 | 4 | 4000 | UST | |
| | | | | |
| | | | | |

PF-14104 (04/03)                ACE USA Copyright, 2003                Page 1 of 2

3012145A4107002M          20120524

|  |  |  |  |  |
|--|--|--|--|--|
|  |  |  |  |  |

All other terms and conditions of the policy remain unchanged

_____

Authorized Signature

3012145A4107002M          20120524

COMMERCIAL
GENERAL LIABILITY
CG 00 64 12 02

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following

LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

The following exclusion is added:

This insurance does not apply to:

**WAR**

Injury or damage, however caused, arising, directly or indirectly, out of

1. War, including undeclared or civil war; or

2. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents, or

3. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

3012145A4107002M          20120524

COMMERCIAL GENERAL LIABILITY
CG 21 71 12 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITED TERRORISM EXCLUSION (OTHER THAN CERTIFIED ACTS OF TERRORISM); CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. The following exclusion is added

This insurance does not apply to

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of an "other act of terrorism". However, this exclusion applies only when one or more of the following are attributed to such act:

1. The total of insured damage to all types of property exceeds $25,000,000 In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

2. Fifty or more persons sustain death or serious physical injury For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death, or

   b. Protracted and obvious physical disfigurement, or

   c. Protracted loss of or impairment of the function of a bodily member or organ; or

3. The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination, or

4. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials, or

5. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials

With respect to this exclusion, Paragraphs 1. and 2. describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

B. The following definitions are added.

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002 The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism".

   a. The act resulted in aggregate losses in excess of $5 million, and

CG 21 71 12 02                    © ISO Properties, Inc , 2002                                       □

3012145A4107002M          20120524

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion

**3.** "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002 However, "other act of terrorism" does not include an act which meets the criteria set forth in Paragraph **b.** of the definition of "certified act of terrorism" when such act resulted in aggregate losses of $5 million or less Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** In the event of an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part

**D.** With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses

3012145A4107002M    20120524

COMMERCIAL GENERAL LIABILITY
CG 30 10 11 94

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# MICHIGAN CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following

UNDERGROUND STORAGE TANK POLICY

**A.** Condition **10.** Cancellation (Section **IV** – Conditions) is replaced by the following

**10. Cancellation**

**a.** The first Named Insured may cancel this policy by mailing or delivering to us or our authorized agent advance notice of cancellation

**b.** We may cancel this policy by sending by certified mail, or delivering, to you a written notice, at your last mailing address known to us or our authorized agent.

Cancellation will be effective

(1) 10 days after you receive notice of cancellation if we cancel for nonpayment of premium or misrepresentation by you; or

(2) 60 days after you receive notice of cancellation if we cancel for any other reason.

unless we specify a later date in our notice as the effective date of cancellation.

**c.** If this policy is cancelled, we will send the first Named Insured any pro rata premium refund due. The minimum earned premium shall not be less than the pro rata premium for the expired time or $25 00, whichever is greater  The cancellation will be effective even if we have not made or offered a refund

**B.** Condition **11.** Nonrenewal (Section **IV** – Conditions) is replaced by the following:

**11. Nonrenewal**

If we decide not to renew this policy, we will send written notice of nonrenewal to you at least 60 days before the end of the policy period. We will send our nonrenewal notice by certified mail, or deliver it, to you at your last mailing address known to us or our authorized agent

CG 30 10 11 94    Copyright, Insurance Services Office, Inc., 1994    Page 1 of 1    □

3012145A4107002M          20120524

COMMERCIAL GENERAL LIABILITY
CG 30 32 12 97

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MICHIGAN CHANGES – UNDERGROUND STORAGE TANK POLICY

This endorsement modifies insurance provided under the following

UNDERGROUND STORAGE TANK POLICY

**A** Paragraph **1.a.(c)** of **Section I – Underground Storage Tank Coverage** is replaced by the following·

**1. Insuring Agreement**

**a. Coverage A – Bodily Injury And Property Damage Liability**

(c) A claim for damages because of the "bodily injury" or "property damage" is first made against any insured in accordance with Paragraph **(3)** below, during the policy period or any Extended Reporting Period we provide under Section V – Extended Reporting Periods

**B.** Paragraph **5.c.** of **Supplementary Payments (Section I – Underground Storage Tank Coverage)** is deleted and replaced by the following

**5. Supplementary Payments**

We will pay, with respect to any claim we investigate or settle or any "suit" against an insured we defend, or any claim or "suit" to which this insurance applies and for which an applicable limit of insurance is available for payment of damages or "corrective action costs"

**c.** Prejudgment interest awarded against the insured on that part of the judgment we pay

**C.** With respect to Condition **2.** Duties In The Event Of An Underground Storage Tank Incident (Section **IV** – Conditions)·

**1.** The first sentence of Paragraph **a.** is deleted and replaced by

You must see to it that we are notified as soon as reasonably possible of an "underground storage tank incident" which may result in a claim, request, demand or proceeding to impose an obligation on the insured for damages because of "bodily injury" or "property damage" or for "corrective action costs"

**2.** Paragraph **b.** is deleted and replaced by the following.

**b.** If a claim is made or "suit" is brought against any insured, or if a request or demand is received from an "implementing agency" requiring action by you, because of an "underground storage tank incident", you must see to it that we receive notice of such claim, "suit", request or demand as soon as reasonably possible.

**3.** Notice given by or on behalf of the insured to our authorized agent, with particulars sufficient to identify the insured, shall be considered notice to us.

3012145A4107002M        20120524

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium, or

   b. 30 days before the effective date of cancellation if we cancel for any other reason

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us

4. Notice of cancellation will state the effective date of cancellation The policy period will end on that date

5. If this policy is cancelled, we will send the first Named Insured any premium refund due If we cancel, the refund will be pro rata If the first Named Insured cancels, the refund may be less than pro rata The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward

**D. Inspections And Surveys**

1. We have the right to

   a. Make inspections and surveys at any time,

   b. Give you reports on the conditions we find, and

   c. Recommend changes

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public And we do not warrant that conditions

   a. Are safe or healthful, or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations

1. Is responsible for the payment of all premiums, and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

3012145A4107002M        20120524

IL 00 21 07 02

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply

    A. Under any Liability Coverage, to "bodily injury" or "property damage":

    (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization

    B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization

    C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if

    (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

    (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

    (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat

IL 00 21 07 02                    © ISO Properties, Inc.,  2001                       □

3012145A4107002M      20120524

2. As used in this endorsement·

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility"

"Nuclear facility" means·

   (a) Any "nuclear reactor",

   (b) Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste",

   (c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

   (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste",

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material

"Property damage" includes all forms of radioactive contamination of property

3012145A4107002M        20120524

# SIGNATURES

| Named Insured | | Endorsement Number |
|---|---|---|
| Nisrine Mini Mart | | 2 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| TSP | G21843428 001 | 05/26/2006 to 05/26/2007 | 05/26/2006 |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

**BANKERS STANDARD FIRE AND MARINE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

**BANKERS STANDARD INSURANCE COMPANY**
436 Walnut Street, P O  Box 1000, Philadelphia, Pennsylvania 19106-3703

**ACE INDEMNITY INSURANCE COMPANY**
436 Walnut Street, P O. Box 1000, Philadelphia, Pennsylvania 19106-3703

**ACE AMERICAN INSURANCE COMPANY**
436 Walnut Street, P O  Box 1000, Philadelphia, Pennsylvania 19106-3703

**ACE PROPERTY AND CASUALTY INSURANCE COMPANY**
436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

**INSURANCE COMPANY OF NORTH AMERICA**
436 Walnut Street, P.O  Box 1000, Philadelphia, Pennsylvania 19106-3703

**PACIFIC EMPLOYERS INSURANCE COMPANY**
436 Walnut Street, P O  Box 1000, Philadelphia, Pennsylvania 19106-3703

**ACE FIRE UNDERWRITERS INSURANCE COMPANY**
436 Walnut Street, P.O Box 1000, Philadelphia, Pennsylvania 19106-3703

GEORGE D. MULLIGAN, Secretary                    JOHN J LUPICA  President

**WESTCHESTER FIRE INSURANCE COMPANY**
1325 Avenue of the Americas, 19th Floor, New York, NY 10019

GEORGE D. MULLIGAN, Secretary                    DENNIS A. CROSBY, JR , President

_____
Authorized Agent

CC-1K11e  (02/06) Ptd  in U S A

3012145A4107002M    20120524

IL P 001 01 04

# U. S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency" OFAC has identified and listed numerous

- Foreign agents,
- Front organizations,
- Terrorists,
- Terrorist organizations, and
- Narcotics traffickers,

as "Specially Designated Nationals and Blocked Persons" This list can be located on the United States Treasury's web site – http//www treas gov/ofac

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC Other limitations on the premiums and payments also apply

IL P 001 01 04          © ISO Properties, Inc., 2004

3012145A4107002M     20120524



## ACE Producer Compensation
## Practices & Policies

ACE believes that policyholders should have access to information about ACE's practices and policies related to the payment of compensation to brokers and independent agents. You can obtain that information by accessing our website at http://www.aceproducercompensation.com or by calling the following toll-free telephone number 1-866-512-2862

3012145A4107002M        20120524

## Trade Or Economic Sanctions Endorsement

| Named Insured<br>**Nisrine Mini Mart** | | | Endorsement Number<br>**3** |
|---|---|---|---|
| Policy Symbol<br>**TSP** | Policy Number<br>**G21843428 001** | Policy Period<br>**05/26/2006 to 05/26/2007** | Effective Date of Endorsement<br>**05/26/2006** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

Insert the policy number  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims   All other terms and conditions of policy remain unchanged.

_____
Authorized Agent

ALL-21101 (11/06) Ptd  in U S A                                    Page 1 of 1

3012145A4107002M      20120524

# POLICYHOLDER DISCLOSURE NOTICE
# OF TERRORISM INSURANCE COVERAGE

| Named Insured<br>Nisrine Mini Mart | | | Endorsement Number<br>4 |
|---|---|---|---|
| Policy Symbol<br>TSP | Policy Number<br>G21843428 001 | Policy Period<br>05/26/2006 to 05/26/2007 | Effective Date of Endorsement<br>05/26/2006 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

You should be aware that under the Terrorism Risk Insurance Act (the Act), any losses resulting from certified acts of terrorism under your existing coverage may be partially reimbursed by the United States Government under a formula established by federal law (applicability is subject to the terms and conditions of each individual policy)  The Act was specifically designed to address the ability of businesses and individuals to obtain property and casualty insurance for terrorism and to protect consumers by addressing market disruptions and ensure the continued availability of terrorism coverage

Under the terms of the Act, you may now have the right to purchase insurance coverage for losses resulting from acts of terrorism. As defined in Section 102(1) of the Act  the term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States to be an act of terrorism, to be a violent act or an act that is dangerous to human life, property, or infrastructure, to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission, and to have been committed by an individual or  individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Responsibility for Compensation under the Act is shared between insurance companies covered by the Act and the United States Government. Under the formula set forth in the Act, the United States Government pays 90% (85% in 2007) of covered terrorism losses exceeding the statutorily established deductible, which is paid by the insurance company providing the coverage.

We are providing you with the terrorism coverage required by the Act. The premium for the coverage is set forth below

Terrorism Risk Insurance Act premium  $ _____

_____
Authorized Agent

TRIA11a (2/06)

# EXHIBIT B

NOTICE OF FILING REMOVAL

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

CASE NO.: 12-006498-CK
HON. MICHAEL F. SAPALA

NISRINE MINI MART, INC., and
ALI CHEBLI,

       Plaintiffs,

v.

ACE AMERICAN INSURANCE
COMPANY,

       Defendant.

---

| | |
|---|---|
| IBRAHIM HAMMOUD (P75765) | RUSSELL W. PORRITT II (P38659) |
| ELSHARNOBY & ASSOCIATES, P.C. | WARD, ANDERSON, PORRITT & BRYANT, PLC |
| Attorney for Plaintiffs | 4190 Telegraph Road, Suite 2300 |
| 12824 Ford Rd Ste. 2 | Bloomfield Hill, Michigan 48302 |
| Dearborn, MI 48126 | (248) 593-1440; Fax:  593-7920 (facsimile) |
| (313) 478-4494;  Fax: (866-380-4535) | rporritt@wardanderson.com |
| iyhammoud@gmail.com | |
| | Of counsel: |
| | Gregory P. Deschenes (BBO No. 550830) |
| | Troy K. Lieberman (BBO No. 681755) |
| | NIXON PEABODY LLP |
| | 100 Summer Street |
| | Boston, Massachusetts 02110 |
| | (617) 345-1000; Fax: (617) 345-1300 |

---

## NOTICE OF FILING FOR REMOVAL

Pursuant to 28 U.S.C. § 1446(d), defendant ACE American Insurance Company ("ACE"), hereby gives notice to the Circuit Court of Wayne County, Michigan and Ibrahim Hammoud, Esq. as attorney for plaintiffs Nisrine Mini Mart, Inc. and Ali Chebli, that on June 12, 2012, ACE filed a Notice of Removal, thereby removing the above-entitled action to the United

-1-

States District Court for the Eastern District of Michigan.  The filing of this notice stays all proceedings in this Court.

Respectfully submitted,

ACE AMERICAN INSURANCE COMPANY,

By its attorneys,

 */s/ Russell W. Porritt II*
RUSSELL W. PORRITT II (P38659)
WARD, ANDERSON, PORRITT & BRYANT, PLC
4190 Telegraph Road, Suite 2300
Bloomfield Hill, Michigan 48302
(248) 593-1440; Fax:  593-7920
rporritt@wardanderson.com

Of counsel:
Gregory P. Deschenes (BBO No. 550830)
Troy K. Lieberman (BBO No. 681755)
NIXON PEABODY LLP
100 Summer Street
Boston, Massachusetts 02110
(617) 345-1000

Dated:  June 12, 2012
(617) 345-1300 (facsimile)

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing instrument was served upon the attorneys of record of all parties to the above cause by electronic filing at their respective e-mail addresses as disclosed by the pleadings of record herein and/or by U.S. Mail, on June 12, 2012.  I declare under penalty of perjury that the above statement is true to the best of my knowledge, information and belief.

*/s/ Bonnie L. Klimek*
_____
Bonnie L. Klimek

---

14018596.2